**LYON et al. v. UNION GAS & OIL CO. et al. SPARKS et al. v. SAME.**
**KAZEE et al. v. SAME.**

(Circuit Court of Appeals, Sixth Circuit. June 28, 1922.)

Nos. 3667–3669.

1. Courts ⊚⟶367—Decisions of state court of last resort as to validity of oil and gas lease followed by federal court.

Decisions of court of last resort of the state of Kentucky, declaring that oil and gas leases providing for the development of land within one year from execution of lease, or in lieu thereof the payment of specified rental to extend lease, will be canceled after a reasonable time if development is demanded and refused, will be followed in the federal court in an action

---

in which it was claimed that a lease affecting land situated in Kentucky became void because of lessees' refusal to develop the land, since the lease is a Kentucky contract, and its validity is to be determined by the law of Kentucky, and since the rule laid down by such decisions has become a rule of property.

2. **Appeal and error ☞858—All issues presented by pleadings and evidence before Circuit Court of Appeals on appeal from District Court.**

All issues presented by the pleadings and evidence are before the Circuit Court of Appeals for adjudication on appeal from the District Court.

3. **Mines and minerals ☞78(7)—Burden held to be on one who claimed lease void for nondevelopment to prove lessees had sufficient time to develop or commence development.**

In an action to quiet title, in which it was claimed that oil and gas lease executed to defendants had become void because of defendants' failure to develop the property within a reasonable time, notwithstanding provision of lease providing for payment of specified amount annually in lieu of development, the burden was on the plaintiff to prove that the time intervening between the notice to lessees that such amount would not be accepted in lieu of development and the commencement of the action was a reasonable time, and sufficient to afford the lessees opportunity to develop or to commence a development of the property.

4. **Mines and minerals ☞78(7)—Lessees not required to delay commencement of action, where lessees made no effort to commence development after notice, but insisted they were not required to.**

Where lessees under oil and gas lease, on receiving notice from the lessors that the lessors demanded the development of their property and would not accept further payments extending the terms of the lease for the commencement of development, did not attempt to comply with the demand and made no effort to commence the development of the property, but insisted that they were not required to so do under the lease, the lessors were not required to further delay commencement of action to quiet title to give the lessees a reasonable time in which to commence drilling, since further delay would have been vain and useless.

5. **Mines and minerals ☞78(2)—Lessor's right to cancellation of lease for nondevelopment by lessees not affected by enactment of subsequent statute.**

Lessors' right to cancel oil and gas lease for nondevelopment by lessees was not affected by subsequent enactment of Acts Ky. 1920, c. 24, § 2, making an oil and gas lease providing for postponement of development by the payment of rentals void, unless lessor thereafter and before executing a new lease accepts rentals, where the lease was executed prior thereto, in view of Ky. St. § 465, providing that no new law shall be construed so as to repeal a former law, or any right accrued or right arising under the former law, or in any way to affect any right or claim arising before the law takes effect.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Actions by J. F. Lyon and another, by L. T. Sparks and another, and by O. B. Kazee and others, against the Union Gas & Oil Company and another. Judgments of dismissal, and plaintiffs appeal. Reversed and remanded, with directions.

See, also, 274 Fed. 957.

S. S. Willis, of Ashland, Ky., for appellants.

Homer Holt and John Holt, both of Huntington, W. Va. (Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for appellees.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DONAHUE, Circuit Judge. In J. F. Lyon et al. v. Union Gas & Oil Company et al., No. 3667, an appeal was taken from the judgment of the District Court dismissing the action instituted by appellant in the circuit court of Lawrence county, Ky., against the Union Gas & Oil Company and A. C. Albin, for the purpose of quieting appellant's title to certain real estate described in their petition and enjoining the defendants from setting up any claim in said premises under and by virtue of an oil and gas lease thereon executed by appellants to A. C. Albin on the 27th day of January A. D. 1916. Upon the petition of the defendants this cause was removed to the District Court of the United States for the Western District of Kentucky.

L. T. Sparks et al. v. Union Gas & Oil Company et al., No. 3668, and O. B. Kazee et al. v. Union Gas & Oil Company et al., No. 3669, are appeals from like judgments in like cases, and involve the same questions as are presented by the record in Lyon et al. v. Union Gas & Oil Company et al., and with the consent of counsel they were heard and submitted together. Each of these appeals involves the validity and construction of separate leases for oil and gas, identical in terms and executed and delivered on substantially the same dates to A. C. Albin, and by him transferred to the Union Gas & Oil Company. The provisions of these leases pertinent to the questions involved are, as copied from the Lyon lease, as follows:

"In consideration of one dollar, receipt of which is hereby acknowledged, J. F. Lyon and Mary C. Lyon (his wife), party of the first part, hereby grant and leases unto A. C. Albin, party of the second part, all the oil and gas in and under the following described premises, together with right to enter thereon at all times for the purpose of drilling and operating for oil or gas, and to erect and maintain buildings and structures and lay pipes necessary for production and transportation of oil and gas. First party shall have one-eighth part of all oil produced and saved from said premises, to be delivered in pipe line with which said second party may connect his wells. If gas is found in sufficient quantities to transport, second party agrees to pay first party one hundred ($100) dollars annually for each well for gas so transported, and first party to have gas at well free of cost to heat and light one dwelling. * * * To have and to hold the above premises for 10 years or as long as gas or oil is found in paying quantities on said premises on the following conditions:

"In case no well is commenced within twelve months from this date, then this grant shall be null and void unless second party shall thereafter pay at the rate of ten cents per acre for each year drilling is delayed. A deposit to the credit of first party in any bank doing business in Blaine, Ky., will be good and sufficient payment for any money falling due on this grant. * * * In case no paying well is drilled on said premises within ten years from date said grant shall be null and void. * * *

"On payment of one dollar by second party and upon abandonment of the premises by second party, or at expiration of rights and privileges granted or failure to pay rental by second party, then this lease shall be null and void and binding on neither party. It is understood between the parties to this agreement that all conditions between the parties hereto shall extend to the heirs, executors, successors, and assigns. * * *"

No well was commenced upon the premises described in this lease within 12 months from its date, nor since that time. At the end of the first 12 months, the lessee did not pay to the lessor 10 cents per acre, or any other sum, but a year later, on the 27th day of January, 1918, the defendants paid to the plaintiffs 10 cents per acre, which was ac-

cepted by them, and on January 27, 1919, the defendants made another payment of 10 cents per acre to the plaintiffs, which was also accepted. On the 12th day of January, 1920, a further payment of 10 cents per acre for the year ending January 27, 1920, was tendered by defendants to plaintiffs which they refused to accept. No tender of payment was made, then or at any other time, for the next ensuing year. On the 4th day of October, 1919, the plaintiffs served a notice upon the defendants that they would no longer accept the annual rentals and permit their land to remain idle and undeveloped, but would require the defendants to execute the contract entered into according to the intention of the parties by commencing, in good faith, the development thereof.

It is insisted upon the part of the appellants that this contract of lease lacks mutuality and is without consideration and void. Brooks v. Oil Co., 244 S. W. ——, decided by Kentucky Court of Appeals May 23, 1922. It is also insisted that, if valid when executed and delivered, the provision therein, "In case no well is commenced within twelve months from this date, then this grant shall be null and void unless second party shall thereafter pay at the rate of ten cents per acre for each year drilling is delayed," is a condition precedent to extending the life of the lease beyond the first year, and not a covenant to pay a sum certain in lieu of commencing such well; that by reason of the failure of the lessees to commence a well within 12 months from the date of the lease, and their failure to pay or tender payment to the lessors of 10 cents per acre at the end of the first 12 months, the lease, by its express terms, became null and void.

It is, however, wholly unnecessary, for the purposes of this case, to decide whether this lease was, at the time of its execution and delivery, a valid lease, or, if valid, then to what extent the lessors, by accepting payments at the end of the second year and the third year, and by giving notice in October of the fourth year that they would not receive further payments for delay, and demanding performance by the lessees of their implied contract to develop this property, have estopped themselves from asserting the provision in the contract that the lease should become null and void if no well was commenced within 12 months unless a specified payment was then made. The court of last resort of Kentucky has declared in a number of cases that leases of this character will be canceled after a reasonable time if development is demanded and refused. Maverick Oil & Gas Co. v. Howell & Carter, 193 Ky. 433, 237 S. W. 40; Keystone Gas Co. v. Salisbury, 192 Ky. 643, 234 S. W. 290; Monarch Oil & Gas Co. v. Richardson, 124 Ky. 607, 99 S. W. 668; Plumber v. Southern Oil Co., 185 Ky. 243, 214 S. W. 896, and cases there cited; Ocala Oil Co. v. Hughes, 187 Ky. 486, 299 S. W. 799.

[1] The defendants admit that the Court of Appeals of Kentucky has established this rule in reference to oil and gas leases in that state, but insist that federal courts, sitting in equity, are not bound to follow these decisions, because they are violative of principle, and because to do so would destroy the uniformity of equity principles and practice throughout the country, and for the further reason that the Kentucky Legislature has denounced the doctrine, and has, by statute, restored the contractual rights of parties thus violated.

This contract of lease is a Kentucky contract. Its validity is to be determined by the law of Kentucky. Not only that, but it is a contract relating to land situate in the state of Kentucky, and therefore the decision of the court of last resort of that state, in reference to contracts of this character, necessarily becomes a rule of property. In Guffey v. Smith, 237 U. S. 116, 35 Sup. Ct. 526, 59 L. Ed. 856, the Supreme Court declared in this positive language that:

"Decisions of the highest courts of the state in which the property is situated are accepted and applied by the federal courts as rules of property in passing upon the estate and rights passing by such a lease. Where, as is the case in Illinois, the holder of such a lease cannot maintain ejectment in the state courts, he cannot, under sections 721 and 1914, maintain such an action in the federal courts in that state."

A further declaration of the Supreme Court in Guffey v. Smith that "the remedies afforded and modes of proceeding pursued in the federal court, sitting as courts of equity, are not determined by local laws or rules of decision, but by general principles, rules, and usages of equity having uniform operation in those courts wherever sitting," has no application whatever to the validity or construction of these contracts of lease. In each of these cases the basic question is, what are the rights of the parties under this contract? and that is a question that is settled by the Kentucky Court of Appeals. The Kentucky Court of Appeals has held that the consideration for an oil and gas lease is the development of the property and the payment of the royalty, and that this development cannot be unreasonably delayed against the will of the lessor. The Kentucky court has also determined "the estate and rights passing" by a Kentucky lease for oil and gas upon Kentucky property, and the Supreme Court of the United States has declared in no uncertain terms, in Guffey v. Smith, supra, that the estate and rights passing by such a lease are determined and controlled by the decisions of the highest courts of the state in which the property is situated. No reason, therefore, appears why the same remedies furnished by the state courts for the protection of the estate and rights passing under such a lease should not be applied by the federal court. The lessees admit that on October 4, 1919, the lessors demanded the development of their property and notified lessees in writing that they would not accept any further payments extending the term of the lease for the commencement of a well thereon, but the lessees averred that after the giving of such notice a reasonable interval did not elapse before the institution of this action.

[2-4] While the trial court did not determine the question of the sufficiency of the time intervening between the notice and the commencement of this action, nevertheless this action is here upon appeal, and therefore all issues presented by the pleadings and the evidence are before this court for adjudication. Under the pleadings in this case the burden of proof was upon the plaintiff to establish by a preponderance of the evidence that the time intervening between the notice and the commencement of this action was a reasonable time, and sufficient to afford the lessees an opportunity to develop, or at least to commence the development of, this property. This burden the plaintiff undertook to meet by showing the date of the notice, the

time of the commencement of the action, and the number of years that the lessees held this property without making any effort whatever to develop the same, but, instead thereof, merely paying to the lessors at the end, and not at the beginning, of each year, the nominal sum of 10 cents per acre for delay in development.

The appellees did not introduce any evidence tending to establish the existence of any cause or causes which would have prevented the lessors from developing, or in good faith commencing the development of, this property after the notice and before the commencement of the suit, although a number of such causes are suggested in brief for appellees. On the contrary, the appellees rested their case upon the testimony introduced by the plaintiffs, evidently upon the theory now urged upon this court that, under this contract of lease and the statute of Kentucky pleaded in their supplemental answer, they were not required to develop this land in pursuance of such notice, but might extend the term of the lease from year to year by the payment of the nominal sum of 10 cents per acre.

In determining the reasonableness of the time that intervened between the notice and the bringing of this suit, the attitude of the appellees in reference to this notice must be taken into consideration. If the appellees had shown a willingness on their part to comply with this notice, and had, in good faith, made an effort to do so, but were prevented by circumstances over which they had no control, then this court would not hesitate to say that the time intervening between the date of the notice and the bringing of the action was not sufficient to show such default upon the part of the lessee as would, in equity, justify the cancellation of this lease. The lessees, however, did nothing of the kind. The evidence does not tend to prove that lessees made any effort whatever to comply with the demands of this notice, or that they had any intention of doing so. On the contrary, it appears from this record that the lessees intended to rely, and did rely, upon the express terms of their written contract, regardless of the decisions of the Court of Appeals of Kentucky in reference to the rights of the lessors to demand development. Notwithstanding the notice that no further payments would be accepted, the lessee tendered payment at the end of the current year. While perhaps, under the lessees' construction of this lease, it was their duty to pay this rental for the delay for the preceding year, nevertheless the tender was made under such circumstances, and in such a manner, as to indicate that the purpose thereof was to extend the life of the lease for another year in defiance of the demand to develop.

Under such circumstances it would seem idle to discuss further the reasonableness of the time allowed the lessee to commence the development of this property, after demand and before the bringing of this action. In view of the lessees' construction of this lease, their interpretation of the respective rights of the lessors and lessees thereunder, their attitude in reference to the decisions of the Kentucky Court of Appeals touching the rights of the lessor to demand development, their basic defense in the trial court and in this court, that they were not required to develop this property in pursuance of lessor's demand, and their failure to make any effort whatever to comply

with the terms of this notice or to manifest any intention on their part to do so, further delay would have been a vain and useless thing.

[5] If it were conceded that the Act of the General Assembly of Kentucky of March 18, 1920, chapter 24, § 2, is constitutional, nevertheless it can have no application to this case. This contract was written and in force, and these respective actions were commenced, prior to the enactment of that statute. This statute does not purport to repeal or exempt its provisions from the general provisions of section 465 of the Kentucky Statutes, which expressly provides that—

"No new law shall be construed so as to repeal a former law  *  *  * or any right accrued or claim arising under the former law or in any way whatever to affect  *  *  * any right accrued or claim arising before the law takes effect.  *  *  *" L. & N. Ry. Co. v. W. U. Tel. Co. (C. C. A.) 268 Fed. 7, affirmed by the Supreme Court February 27, 1922, 258 U. S. ——, 42 Sup. Ct. 258, 66 L. Ed. ——.

For the reasons above stated, the judgment of the District Court is reversed, and cause remanded for further proceedings in conformity with this opinion.